## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NEW YORK

---

PATRICE WILLIAMS,

                Plaintiff,

v.

NEW YORK STATE GAMING
COMMISSION,

                Defendant.

Civil Action No.: __19-cv-720_____

COMPLAINT

Jury Trial Demanded

---

Plaintiff PATRICE WILLIAMS ("Plaintiff" or "Ms. Williams"), by and through her undersigned counsel, files this Complaint and Jury Demand against Defendant New York State Gaming Commission ("Defendant" or "NYSGC"):

### NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964, as amended, Title I of the Civil Rights Act of 1991, as amended, and New York Human Rights Law, N.Y. Executive Law §§ 290, et seq. ("New York Human Rights Law"), as amended, to correct unlawful employment practices on the basis of sex and to provide appropriate relief to Ms. Williams, who was adversely affected by such practices.

### JURISDICTION AND VENUE

1.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.§ 2000e et seq. ("Title VII"), and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a, as amended.

3590484, 1, 065792.0001

2.      Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's state claims brought pursuant to New York Human Rights Law in that said claims are so related to the federal law claims in this action that they form part of the same case or controversy under Article III of the United States Constitution.  Plaintiff's state law claims share all common operative facts with the federal law claims, and the parties are identical. Resolving Plaintiff's federal and state claims in a single action serves the interests of judicial economy, convenience, consistency, and fairness to the parties.

3.      Venue is proper in this judicial district under 28 U.S.C. § 1391(b)-(c) and 42 U.S.C. § 2000e et seq., because Defendant NYSGC maintains offices in this district, conducts business in this district,  a substantial part of the events and omissions giving rise to the claims alleged herein occurred in this district,  the alleged unlawful employment practices were committed here, and employment records and other documents relevant to those practices are maintained and administered here.

4.      The Western District of New York has personal jurisdiction over Defendant NYSGC because Defendant maintains offices in this district, does business in New York and in this district, and because many of the acts complained of and giving rise to the claims alleged herein occurred in this district.

5.      Plaintiff has exhausted her administrative remedies and complied with all statutory prerequisites to her Title VII and New York Human Rights Law claims.

6.      On or about November 10, 2014, Plaintiff filed a Charge of Discrimination against Defendant NYSGC with the Equal Employment Opportunity Commission ("EEOC") based on sex and a hostile work environment resulting from discrimination based on sex.(the

2

"First Charge").  A true and correct copy of Plaintiff's First Charge is attached hereto as **Exhibit A**.

7.      On or about August 18, 2015, Plaintiff filed a second Charge of Discrimination with the EEOC based on sex and retaliation by Defendant NYSGC (the "Second Charge"), arising, in part, upon retaliation experienced by Plaintiff for filing the First Charge.  A true and correct copy of Plaintiff's Second Charge is attached hereto as **Exhibit B**.

8.      On November 29, 2018, the EEOC issued written Determinations on the First Charge and the Second Charge, finding it reasonable that Defendant NYSGC discriminated against Plaintiff on the basis of her gender, and retaliated against her.   A true and correct copy of said Determinations are attached hereto as **Exhibits C** and **D**, respectively.

9.       By notice dated March 7, 2019, the EEOC issued a Notice of Right to Sue with respect to both the First Charge and the Second Charge ("Notice of Right to Sue"). A true and correct copy of said Notice of Right to Sue is attached hereto as **Exhibit E**.

10.     This Complaint is made within ninety days of said Notice of Right to Sue.

## PARTIES

11.     At all times relevant hereto, Plaintiff was and is a resident of the State of New York, and an employee of Defendant.

12.     Upon information and belief, at all times relevant hereto, Defendant NYSGC was and is an agency of the State of New York that oversees casino gaming, charitable gaming, horse racing, lottery, and video lottery terminals in New York State, including overseeing gaming operations at Indian casinos operated by tribes located within New York State such as the Seneca Niagara Casino where Plaintiff works.

3590484, 1, 065792.0001

13.     Upon information and belief, Defendant NYSGC was formed in February 2013 when New York State merged the New York State Racing and Wagering Board, and the New York Lottery.

14.     Upon information and belief, Defendant NYSGC maintains control, oversight, and direction over its operations and employment practices.

15.     At all times hereinafter mentioned, Defendant NYSGC employed 20 or more individuals.

16.     At all times hereinafter mentioned, Defendant NYSGC, was and still is an "employer" within the meaning of 42 U.S.C. § 2000e(b), and N.Y. Executive Law § 292(5), and subject to Title VII and New York Human Rights Law.

## FACTUAL BACKGROUND

17.     Plaintiff was hired by a predecessor to Defendant NYSGC in 2002 as a Senior Gaming Operations Inspector ("Senior Gaming Inspector"). The job duties of a Senior Gaming Inspector include serving as lead gaming operations inspector on an assigned shift, and to have the opportunity to possibly train, develop, and supervise Gaming Operations Inspectors. The position of a Gaming Operations Inspector is lower entry level position where the job duties are to review and monitor gaming operations, and report findings to higher level staff.

18.     Since the commencement of her employment, Plaintiff has been subjected to discrimination and different terms and conditions of employment when compared to her male coworkers.  Including the following:

3590484, 1, 065792.0001

**Affording Training Opportunities Based Upon Sex**

a.  Defendant afforded a male employee, Brian Maurer, a Senior Gaming Inspector, with additional training opportunities to train for a potential supervisory position that were not made available to female employees, including Plaintiff.

b.  The training Mr. Maurer was afforded included training on timekeeping systems, attending meetings with supervisors regarding key control observations, reviewing monthly audit reports, training employees, reviewing Gaming Inspector reports, generating reports for supervisors, revising applications, reviewing patron complaints, attending an annual supervisor/management meeting in Schenectady, NY, training in and/or authored inspector/senior evaluations, reviewed job applicants resumes and interviewed applicants for a vacated inspector position at the Seneca Niagara Casino.

c.  Upon information and belief, Defendant contends that Mr. Maurer volunteered for these training opportunities, yet no such volunteer opportunities were made known to or offered to female employees, including Plaintiff.

**Discrimination in Hiring Practices Based upon Sex**

d.  On or about August 15, 2014, Defendant posted an opening for the position of Supervising Gaming Operations Inspector.

e.  Previously when this position was posted it required "[t]hree years of experience consisting of two years enforcing gaming regulations where you are primarily monitoring gaming activity between the public and casino staff and/or the public's use of gaming equipment **AND** one year of any supervisory experience."

3590484, 1, 065792.0001

f.  Plaintiff and at least two other female employees applying for the position had prior
    supervisory experience in their work histories that met the criteria.  Upon information
    and belief, Brian Maurer did not.

g.  Plaintiff thereafter applied for the position of Supervising Gaming Operations
    Inspector.

h.  On or about September 10, 2014, Plaintiff and another female employee traveled to
    Schenectady, New York for interviews for this position.  Plaintiff learned that the
    interviews given to the female applicants were markedly different from the interviews
    given to two male applicants, Brian Maurer and Jason Toth, one week earlier on
    September 3, 2014, in that the male applicants were introduced around the office, and
    taken to lunch, whereas Plaintiff and her female colleague were not.  Upon
    information and belief, while being introduced around the office the comments made
    by the person doing the introductions caused Mr. Toth to conclude that Mr. Maurer
    was going to be awarded the position.

i.  Upon information and belief, Plaintiff was the leading candidate for the Supervising
    Gaming Operations Inspector position.

j.  In early October 2014, Plaintiff was informed by Gary Bevilaqua, a male coworker
    that he "wasn't going to work for a f***ing woman" and Plaintiff  "didn't stand a
    chance for a promotion."

k.  On or about October 14, 2014, Plaintiff was informed by Arthur Askins, Indian
    Gaming Manager for Defendant, that despite being the lead candidate for the
    Supervising Gaming Operations Inspector position she had not been awarded the job,
    and that instead Brian Maurer was being given the position.  In response, Plaintiff

6

stated to Mr. Askins, "Are you telling me they chose a male over three more qualified females? He has no supervisory experience."  In response Askins admitted that Maurer had been "groomed" for the position (i.e. been afforded training and other opportunities not afforded to Plaintiff or other female employees).

l.   Moreover, dating back to at least July, 2014, Defendant allowed and encouraged Maurer to unofficially perform some of the duties exclusively associated with the Supervising Gaming Operations Inspector position in order to assist him in officially securing the position.

m.  Plaintiff complained to Mr. Askins that this "grooming" of Mr. Maurer had not been afforded to her, and that she believed that this was discriminatory based upon her gender.  Upon information and belief, Defendant took no action in response to this complaint.

n.   Mr. Maurer was awarded the Supervising Gaming Operations Inspector position in October 2014, despite Plaintiff and two other female employees/applicants being more qualified.

o.   In reviewing the August 2014 posting for the Supervising Gaming Operations Inspector position, Plaintiff and other female applicants realized that it had been altered from the previous time this same position was posted.

p.   The job posting was intentionally altered by Defendant to eliminate the previous requirement of one year of supervisory experience, which Plaintiff had, and Mr. Maurer did not, and instead included an unapproved minimum qualification of three years of experience as a Senior Gaming Inspector, which meant that Mr. Maurer could then apply for the position.

3590484, 1, 065792.0001

q.  The position of Senior Gaming Inspector does not provide the requisite supervisory experience previously required for the position of Supervising Gaming Operations Inspector.  Upon information and belief, the qualifications were intentionally changed by Defendant to allow Mr. Maurer to apply for the Supervising Gaming Operations Inspector position.

r.  Upon information and belief, in or about October 2014, one of the other female applicants contacted the New York State Department of Civil Service about the change in the posting's minimum qualifications and was informed that the change in the minimum qualifications was not approved by that department and therefore the posting for the Supervising Gaming Operations Inspector was invalid.

s.  Upon information and belief, on or about October 17, 2014, Defendant was contacted by the NYS Department of Civil Service and informed that the August 15, 2014 posting eliminating the requirement of one year of supervisory experience and substituting three years' experience as a Senior Gaming Inspector was invalid and the process for filling the positon would have to be re-done.

t.  On November 10, 2014, Plaintiff filed the First Charge.

u.  From October 2014 to January 2015, Mr. Maurer was never officially promoted to the new position.  Instead, he was allowed to act "out of title", meaning he was given the duties of a Supervising Gaming Operations Inspector without the official title.

v.  In or about January 2015, Defendant again posted an opening for Supervising Gaming Operations Inspector, again with the three years as a Senior Gaming Inspector requirement and without the one-year supervising/management experience requirement.  Upon information and belief, Defendant pressed forward in getting the

3590484, 1, 065792.0001

qualifications for the posting changed and approved to again allow Mr. Maurer to qualify for and be promoted to the position.

w.  Plaintiff again applied for the position, but this time was not interviewed despite previously having been the top rated candidate for the position. Upon information and belief, no female has ever been hired for this position.

x.  Brian Maurer was thereafter awarded the position on or about May 21, 2015.

**Retaliation**

y.  On or about May 15, 2015, Mr. Maurer listed his old "E line" position for bidding. The "E-Line" position was during the day. The bid stated that the position would be filled by seniority and contrary to all previously historical bids for the "E-Line" position, the bid now stated that the shift was not strictly a senior inspector position.

z.  Up to that point, this position had always been filled by a Senior Gaming Inspector.

aa. Moreover, the person holding the "E-Line" position, which most recently to that point had been Mr. Maurer, would be allowed to "float" every Saturday to the "B-Line" position even though there was no agency need or vacancy in the shift on that day.

bb. Mr. Maurer informed Plaintiff that she would not be allowed to float in this manner, thereby making the job less appealing to Plaintiff.

cc. Upon information and belief, the requirements for this position were changed in retaliation for Plaintiff filing the First Charge.

dd. On or about August 4, 2015, Mr. Maurer sent an email advising that he was anticipating taking about 2 weeks leave.

ee. On or about August 6, 2015, another female employee, who had also applied for the Supervising Gaming Operations Inspector position, sent an email to Mr. Askins

3590484, 1, 065792.0001

asking him why she and other Senior Gaming Inspectors were not being offered the opportunity to perform his duties in his absence, which were similar to the opportunities afforded to Mr. Maurer under similar circumstances prior to his promotion.

ff. On August 10, 2015, Mr. Askins responded via email stating: "As a result of your EEOC complaint, it has come to our attention that even the mere selection of a person to perform supervisor duties may expose our agency to discrimination charges … rather than expose our agency to further liability or create additional processes, no one will be given supervisory duties on a temporary basis and management will use existing management personnel to fill those duties on a temporary basis."  A true and correct copy of said August 10, 2015 email is attached hereto as **Exhibit F**.

gg. This statement by Mr. Askins runs in direct contravention of the job duties and responsibilities of a Senior Gaming Inspector, like Plaintiff, which includes the duty/opportunity "to perform the more difficult assignments, and may be asked to supervise in the absence of Supervising Gaming Operations Inspector."

hh. Upon information and belief, Defendant has elected not to afford such training/ higher responsibility opportunities to Plaintiff in retaliation for filing her November 10, 2014 Charge of Discrimination.

ii. As a result of this conduct, Plaintiff thereafter filed the Second Charge on August 18, 2015.

19.    Based upon the foregoing, on November 29, 2018, the EEOC issued the two Determinations with respect to the First Charge and Second Charge, finding reasonable cause

3590484, 1, 065792.0001

2d66aa0b8d1dd6e3

that Defendant discriminated against Plaintiff on the basis of gender (female) and in retaliation

for her previously filing the First Charge.

20.     After failed attempts at conciliation, the EEOC issued the aforesaid Notice of

Right to Sue.

## FIRST CLAIM FOR RELIEF
### (Sexual Discrimination and Hostile Work Environment in Violation of Federal Law)

21.     Plaintiff repeats and realleges paragraphs 1 through 20 in full and with the same

force and effect as if fully set forth herein.

22.     Defendant has engaged in intentional gender discrimination in the terms and

conditions of the Plaintiff's employment and created a hostile work environment based upon

Plaintiff's sex.

23.     Defendant's conduct violates Title VII.

24.     The Plaintiff has filed this action under Title VII within ninety (90) days after

receipt of her "Notice of Right to Sue" letter from the EEOC.

25.     Defendant's discriminatory conduct, in violation of Title VII, has caused the

Plaintiff to suffer a loss of pay, benefits, and prestige in an amount to be determined at trial.

26.     Defendant's actions have caused Plaintiff to suffer mental and emotional distress,

entitling her to compensatory damages pursuant to 42 U.S.C. § 1981a in an amount to be

determined at trial.

## SECOND CLAIM FOR RELIEF
### (Retaliation in Violation of Federal Law)

27.     Plaintiff repeats and realleges paragraphs 1 through 26 in full and with the same

force and effect as if fully set forth herein.

3590484, 1, 065792.0001

28.     Section 704(a) of Title VII of the Civil Rights Act of 1964, *as amended*, prohibits employers from discriminating against an employee "because [she] has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a).

29.     Plaintiff made informal and formal complaints to Defendant's agents and employees opposing Defendant's unlawful, discriminatory employment practices based on sex.

30.     As a result of Plaintiff's complaints, Defendant's agents and employees took materially adverse actions against Plaintiff.

31.     Defendant's adverse actions constituted retaliatory workplace harassment.

32.     Defendant's retaliatory actions were sufficient to deter a reasonable person from engaging in protected activity under Title VII.

33.     As a direct, legal and proximate result of Defendant's retaliation, Plaintiff has sustained, and will continue to sustain, economic and emotional injuries, resulting in damages in an amount to be proven at trial.

**THIRD CLAIM FOR RELIEF**
**(Sexual Discrimination/Hostile Work Environment in Violation of**
**New York Human Rights Law)**

34.     Plaintiff repeats and realleges paragraphs 1 through 33 in full and with the same force and effect as if fully set forth herein.

35.     Section 296.1(a) of the New York Human Rights Law prohibits sexual harassment in employment.

36.     Defendant was Plaintiff's employer within the meaning of those laws.

37.     Defendant denied Plaintiff the benefit of employment, including all favorable conditions and emoluments thereof and created and allowed to exist a hostile, intolerable workplace based on sex.

12

38.     Defendant's actions were taken under circumstances giving rise to an inference of discrimination.

39.     As a direct and proximate result of Defendants' discriminatory conduct, Plaintiff suffered adverse employment consequences.

40.     Plaintiff was caused to suffer lost past and future wages, professional opportunities, other valuable benefits and emoluments of employment as well as to endure severe emotional pain and trauma, all to her detriment and in an amount to be determined at trial.

**FOURTH CLAM FOR RELIEF**
**(Retaliation in Violation of N.Y. Human Rights Law)**

41.     Plaintiff repeats and realleges paragraphs 1 through 40 in full and with the same force and effect as if fully set forth herein.

42.     Section 296.1(a) of the New York Human Rights Law prohibits retaliation against an employee who seeks to assert rights under the Human Rights Law.

43.     Defendant was Plaintiff's employer within the meaning of the Human Rights Law.

44.     Plaintiff complained to Defendant about the mistreatment based on gender by employees and managers of Defendant.

45.     In response, Plaintiff was subjected to additional mistreatment until her working conditions became unbearable, all with the knowledge and approval of Defendant for the purpose of punishing her for attempting to assert her rights.

46.     Defendant's actions were taken under circumstances giving rise to an inference of discrimination.

3590484, 1, 065792.0001

47.     As a direct and proximate result of Defendant's discriminatory conduct, Plaintiff suffered adverse employment consequences. Plaintiff was caused to suffer lost past and future wages, professional opportunities, other valuable benefits and emoluments of employment as well as to endure severe emotional pain and trauma, all to her detriment in an amount to be determined at trial.

## JURY TRIAL DEMAND

48.     Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury in this action of all issues so triable.

WHEREFORE, Plaintiff demands judgment on her First and Second Claims for relief as follows:

A.  On her First and Second Claims for Relief:

    a.  Awarding Plaintiff compensatory damages for the humiliation, emotional distress, and other damages caused by Defendants' conduct;

    b.  Awarding Plaintiff punitive damages for Defendants' malicious and recklessly indifferent conduct;

    c.  Awarding Plaintiff all employment benefits she would have enjoyed had she not been discriminated and retaliated against;

    d.  Awarding temporary, preliminary, and permanent injunctive relief prohibiting Defendant from engaging in further discriminatory conduct;

    e.  Awarding Plaintiff her costs and expenses of litigation, including reasonable attorneys' fees, pursuant to the Title VII, and/or 42 U.S.C. § 1988; and

    f.  Awarding such other and further relief as the Court deems just and proper.

B.  On her Third and Fourth Claims for Relief:

    a.  Awarding Plaintiff compensatory damages for the humiliation, emotional distress, and other damages caused by Defendants' conduct;

14

b.  Awarding Plaintiff all employment benefits she would have enjoyed had she

not been discriminated and retaliated against;

c.  Awarding temporary, preliminary, and permanent injunctive relief prohibiting

Defendant from engaging in further discriminatory conduct;

d.  Awarding Plaintiff her costs and expenses of litigation, including reasonable

attorneys' fees, pursuant to N.Y. Executive Law § 297(10); and

e.  Awarding such other and further relief as the Court deems just and proper.


Dated:  June 4, 2019
        Buffalo, New York

                              LIPSITZ GREEN SCIME CAMBRIA LLP


                              By:     s/Jeffrey F. Reina_____
                                      Jeffrey F. Reina, Esq.
                                      Diane M. Perri Roberts, Esq.
                              *Attorney for Plaintiff Patrice Williams*
                              42 Delaware Avenue, Suite 120
                              Buffalo, New York 14202
                              (716) 849-1333
                              droberts@lglaw.com
                              jreina@lglaw.com

3590484, 1, 065792.0001