**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

_____

**PATRICE WILLIAMS,**

                      **Plaintiff,**

        **-v-**                                **19-CV-720JLS(Sr)**

**NEW YORK STATE GAMING COMMISSION,**

                      **Defendant.**

_____

## REPORT, RECOMMENDATION AND ORDER

This case was referred to the undersigned by the Hon. Lawrence J. Vilardo, in accordance with 28 U.S.C. § 636(b), for all pretrial matters and to hear and report upon dispositive motions. Dkt. #8. The case is currently assigned to the Hon. John L. Sinatra. Dkt. #11.

Plaintiff, a Senior Gaming Inspector for the New York State Gaming Commission ("Gaming Commission"), alleges that she has been subjected to disparate treatment and a hostile work environment due to sex and subjected to retaliation after complaining about discrimination. Dkt. #1. Plaintiff's complaint alleges the following causes of action: (1) sex discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e _et seq_.,("Title VII"); (2) hostile work environment in violation of Title VII; (3) retaliation in violation of Title VII; (4) sex discrimination in violation of the New York Human Rights Law ("NYHRL"); (5) hostile work environment in violation of the NYHRL; and (6) retaliation in violation of the NYHRL. Dkt. #1.

Defendant seeks dismissal of all of plaintiff's causes of action except plaintiff's Title VII sex discrimination claim. Dkt. #4-1, p.5. Specifically, defendant argues that plaintiff's NYHRL claims are barred by the doctrine of sovereign immunity and plaintiff's complaint does not plausibly allege retaliation or a hostile work environment. Dkt. #4-1.

For the following reasons, it is recommended that defendant's motion to dismiss be granted with respect to plaintiff's NYHRL claims and Title VII hostile work environment claim and denied with respect to plaintiff's Title VII retaliation claim.

BACKGROUND

Plaintiff was hired as a Senior Gaming Operations Inspector in 2002. Dkt. #1, ¶ 17. Plaintiff alleges that another Senior Gaming Inspector, Brian Maurer, was afforded additional opportunities to train for potential supervisory positions which were not offered to female employees, including plaintiff. Dkt. #1, ¶ 18a. For example, Mr. Maurer attended training on timekeeping systems and evaluations; attended meetings with supervisors regarding key control observations, reviewing key control observations, reviewing monthly audit reports, training employees, reviewing Gaming Inspector reports, generating reports for supervisors, revising applications and reviewing patron complaints; attended an annual supervisor/management meeting in Schenectady, New York; and reviewed job applications and interviewed applicants. Dkt. #1, ¶ 18b.

On August 15, 2014, the position of Supervising Gaming Operations Inspector was posted. Dkt. #1, ¶ 18d. Mr. Maurer and another male employee, Jason

-2-

Toth, interviewed for the position in Schenectady, New York on September 3, 2014. Dkt. #1, ¶ 18h. Plaintiff and another female employee[1] interviewed for the position in Schenectady, New York on September 10, 2014. Dkt. #1, ¶ 18h. Plaintiff subsequently learned that Indian Gaming Manager, Art Askins, introduced the male applicants around the office and took them to lunch when they were in Schenectady for their interviews, but did not do the same for plaintiff and her female coworker. Dkt. #1, ¶ 18h & Dkt. #1-1, p.2.

In early October of 2014, Gary Bevilaqua, a male coworker, informed plaintiff that he "wasn't going to work for a f***ing woman" and that she "didn't stand a chance for promotion." Dkt. #1, ¶ 18j.

On October 14, 2014, Mr. Askins informed plaintiff that Mr. Maurer had been awarded the promotion to the Supervising Gaming Operations Inspector position. Dkt. #1, ¶ 18k. When plaintiff inquired why Mr. Maurer, who had no supervisory experience, was awarded the promotion over three more qualified females, Mr. Askins responded that Mr. Maurer had been groomed for the position. Dkt. #1, ¶18k. Plaintiff informed Mr. Askins that she believed that the decision to "groom" Mr. Maurer and not offer such an opportunity to her was a form of gender discrimination. Dkt. #1, ¶ 18m.

---

[1] Tanya Stephenson also commenced a lawsuit claiming sex discrimination, hostile work environment and retaliation based upon similar factual allegations, including the fact that she interviewed for this position with another female employee in Schenectady, New York on September 10, 2014. 19-CV-722.

Upon reviewing the posting for the position, plaintiff realized that it had been altered from prior postings of the same position to require three years experience as a Senior Gaming Inspector, which Mr. Maurer possessed, instead of the prior requirement of one year of supervisory experience, which Mr. Maurer did not posses. Dkt. #1, ¶ 18o-q. At least three female employees, including plaintiff, possessed the supervisory experience previously required for the position. Dkt. #1, ¶ f. One of the other female applicants[2] contacted the New York State Department of Civil Service ("Civil Service"), to inquire about the change in the job posting and was informed that the change in minimum qualifications had not been approved by the Civil Service, rendering the posting for the position invalid. Dkt. #1, ¶ 18r. The Civil Service informed the Gaming Commission that the position would have to be re-posted. Dkt. #1, ¶ 18s. As a result, Mr. Maurer was not promoted, but was permitted to perform the duties of a Supervising Gaming Operations Inspector. Dkt. #1, ¶ 18u.

On November 10, 2014, plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), through the New York State Division of Human Rights (NYSDHR"), complaining that she had been subjected to different terms and conditions of employment than her male coworkers. Dkt. #1-1, pp.2-3. She specifically complained that

> Throughout my employment, I have been subject to different terms and conditions of employment than that of my

---

[2] Tanya Stephenson alleges that she contacted the New York State Department of Civil Service ("Civil Service"), to inquire about the change in the job posting and was informed that the change in minimum qualifications had not been approved by the Civil Service, rendering the posting for the position invalid. 19-CV-722 at Dkt. #1, ¶ 19r.

coworkers. Specifically, I have been denied shift changes, training opportunities and promotion granted to male coworkers. Most recently, in or around August 2014, I applied for the position of Supervising Gaming Operations Inspector. On or about September 10, 2014, I and another female candidate traveled to Schenectady for an interview for the position. Upon information and belief, [o]n or about September 3, 2014, 2 male coworkers also traveled to Schenectady for interviews. Art Askins, Indian Gaming Manager and one of two individuals who conducted the interviews, not only gave the males a tour of the office but also took the male candidates to lunch. The same treatment was not afforded to female candidates upon completion of their interviews. In or around October 2014, a male coworker, Gary Bevilaqua, stated that he wasn't going to work for a "fucking woman" and that I 'didn't stand a chance for promotion." On or about October 14, 2014, I was called by Askins and advised that I did not get the job and that the position was given to Brian Maurer. I stated to Askins "Are you telling me they chose a male over three more qualified females? He has no supervisory experience." Askins then stated that Mauer had been being [sic] groomed for the position by the previous Supervisor Jack Coppolla. I complained to Askins that I had not been afforded the same type of "grooming" or training that had been provided to Maurer and that I found this discriminatory. Upon information and belief, Maurer has been unofficially performing the duties and responsibilities of the supervisory position at least as far back as July 2014 if not before. Although I raised these concerns to Askins, to date nothing has been done to investigate my concerns. Finally, I was told by coworker Tonya [sic] Stephenson that Supervisor Daryll Thompson [sic] that I was rated #1 for the position. Upon information and belief, no female holds this position throughout New York State.

Dkt. #1-1, pp.2-3.


In January of 2015, after obtaining approval from the Civil Service to eliminate the supervisory experience requirement, the Gaming Commission posted an opening for Supervising Gaming Operations Inspector. Dkt. #1, ¶ 18v. Plaintiff applied for the position, but was not interviewed. Dkt. #1, ¶ 18w.

On May 15, 2015, Mr. Maurer posted his prior "E-line" position for bidding. Dkt. #1, ¶ 18y. Although the position had always been filled by a Senior Gaming Inspector, the bid stated that the position would instead be filled based upon seniority. Dkt. #1, ¶¶18y & z. In addition, the position would no longer be allowed to float to the B-line position every Saturday, which rendered the position less appealing to plaintiff, and caused her to decline the position. Dkt. #1, ¶ bb & Dkt. #1-1, p.9.

Brian Maurer was awarded the position of Supervising Gaming Operations Inspector on May 21, 2015. Dkt. #1, ¶ 18x.

On August 4, 2015, Mr. Maurer advised that he would be taking leave for two weeks. Dkt. #1, ¶ 18dd. By email to Mr. Askins[3] dated August 6, 2015, Tanya Stephenson noted that when the prior supervisor was absent, Mr. Maurer "handled leave requests, scheduling, routine operations, and any emergency situations," and asked Mr. Askins

> why a Senior Inspector at this Site has not been chosen to perform those duties while [Mr. Maurer] is off on leave? As you are aware Mr. Askins, two SNC Senior Inspectors you interviewed for the Site Supervisor position already have extensive management experience and are seasoned Supervisors.

Dkt. #1-1, p.22. By email dated August 10, 2015, Mr. Askins responded:

> As a result of your EEOC complaint, it has come to our attention that even the mere selection of a person to perform supervisory duties may expose our agency to discrimination charges. The process may be considered "grooming" a

---

[3] Plaintiff was copied on this email. Dkt. #1-1, p.22.

person for a role and therefore, such assignments must be done through a formal selection process that is non-discriminatory, according to EEOC Investigator Maureen Kielt. Rather than expose our agency to further liability or create additional processes, no one will be given supervisory duties on a temporary basis and management will use existing management personnel to fill those duties on a temporary basis.

Furthermore, as noted in your EEOC [sic], assigning temporary supervisory duties to senior inspectors is out-of-title work. The Gaming Commission sees no emergency basis to assign this out-of-title work and therefore will prudently refrain from assigning such out of title work [sic].

Dkt. #1-1, p.22.

Plaintiff filed a second charge of discrimination on August 18, 2015, complaining that shortly after she filed the prior charge, defendant

re-posted a job for Site Supervisor. . . . I was not interviewed again for the position. Upon information and belief, I had been the top candidate for the position. The position was awarded to a younger male employee with less experience than me. . . . Additionally, starting in or around June 2013 up to his awarding of the position, Maurer received training on  . . . . Most recently, Maurer reviewed and emailed requested documentation to State Police Investigators, training [sic] an Inspector on Section 2 of the Training Manual, reviewed reports from the Inspector, reviewed December audit reports and generated report for supervisor review, scanned documents for Meal book audits, destroyed (shredded) outdated reports and records, attended supervisor meetings, planned carpet replacement for the office, reviewed resumes for applicant interviews and conducted said interviews with Supervisors Art Askins and Darrell Thompson, scheduled applicants for interviews, reviewed and dealt with all patron complaints and has met with other Site Supervisors and the Vice President of Seneca Niagara Casino, as well as various other supervisory duties. Although [defendant] claims that Maurer "volunteered" to assis [defendant] in the supervisory duties while the selection process for Site Supervisor was taking place, this opportunity was not offered to any female

-7-

> employee, even after I and other females questioned why
> we were not provided with the same opportunities. It is clear
> that [defendant] was training and preparing Maurer for the
> Site Supervisor position without providing a fair and impartial
> opportunity for female employees that expressed interest in
> gaining the same opportunities afforded to Maurer.

Dkt. #1-1, pp.8-9. Plaintiff also complained that

> On or about May 21, 2015, Maurer listed his old position for
> bidding. The bid stated that it would be filled by Seniority
> and contrary to all previous historical bids for the "E line"
> floater position, the bid stated that it was NOT strictly a
> Senior or Inspector. In fact this position has always been
> filled by a Senior Inspector. If [defendant] followed previous
> precedent in filling the job, I would finally be allowed an
> opportunity to obtain a day shift position after 12 years on
> the job. I believe the terms and conditions of this bid were
> changed in retaliation for my filing a previous EEOC charge
> and because of my gender/female. Additionally, . . . I was
> advised by Maurer that the same opportunity [to float the
> position every Saturday to the "B line"] would not be afforded
> to me. I turned down the position for this reason.

Dkt. #1-1, p.9. Plaintiff asserted that she had been denied an opportunity for a day shift

because of her gender and then retaliated against by having the terms and conditions

of the "R line" floater position changed to freeze plaintiff out of a more desirable shift.

Dkt. #1-1, p.9. Finally, plaintiff complained that Mr. Askins' refusal to permit Senior

Gaming Operations Inspectors an opportunity to perform Mr. Maurer's duties during his

absence was retaliation for the filing of EEOC charges. Dkt. #1-1, p.9. Plaintiff noted

that the job duties of a Senior Gaming Inspector provide that an employee "may be

asked to supervise in the absence of Supervising Gaming Operations Inspector." Dkt.

#1-1, p.9. Plaintiff also complained that since the filing of the EEOC charges, she has

been ostracized by her peers. Dkt. #1-1. p.9.

On November 29, 2018, the EEOC determined that there was reasonable cause to believe that the Gaming Commission discriminated against plaintiff on the basis of her gender and in retaliation for filing a previous charge of discrimination. Dkt. #1-1, pp.14. More specifically, the EEOC determined that it's investigation revealed that

> Brian Maurer did receive additional opportunities to train for a Supervisory position that were not afforded to females. Additionally, a review of the application and interview process shows that [plaintiff] was found to be the front runner for the position. The fact that a fellow employee made comments of a derogatory and discriminatory nature may not have had an effect on the hiring process, but clearly demonstrates the work environment and its hostility towards female employees.

Dkt. #1-1, p.14. In addition, the EEOC determined that "instead of developing a fair and equitable policy to provide supervisory experience to all eligible employees, [plaintiff] was punished by having the opportunity taken from her in retaliation for filing a previous charge of discrimination." Dkt. #1-1, p.18.

<u>DISCUSSION AND ANALYSIS</u>

**Fed. R. Civ. P. 12(b)(1)**

Defendant moves to dismiss plaintiff's NYHRL claims as barred by the doctrine of sovereign immunity. Dkt. #4-1, pp.6-7.

Plaintiff responds that these claims were brought before this court to promote judicial economy by avoiding parallel state and federal litigation based upon the same facts. Dkt. #9, p.27.

A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure when the district court lacks the statutory or constitutional power to adjudicate it. *Markarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). To defeat a motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, the plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence. *Id.*

As a general rule, state governments and their agencies, such as the Gaming Commission, may not be sued in federal court unless they have waived the sovereign immunity afforded them by the Eleventh Amendment to the United States Constitution or there has been a valid abrogation of that immunity by Congress. *Woods v. Roundout Valley Cent. Sch. Dist. Bd. of Educ*., 466 F.3d 232, (2d Cir. 2006). New York has not waived its Eleventh Amendment immunity with respect to claims commenced in federal court pursuant to the NYHRL. *Allessi v. N.Y. State Dep't of Corrs & Cmty. Supervision,* 16 F. Supp.3d 221, 226 (W.D.N.Y. 2014).  Accordingly, it is recommended that plaintiff's NYHRL claims be dismissed, without prejudice, for lack of subject matter jurisdiction. *See Katz v. Donna Karan Co., L.L.C.*, 872 F.3d 114, 121 (2d Cir. 2017) (12(b)(1) dismissal for lack of federal subject matter jurisdiction must be without prejudice).

### Fed. R. Civ. P. 12(b)(6)

"In adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration "to facts stated on the face of the complaint or incorporated in the

complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Israel Discount Bank of New York*, 199 F.3d 99, 107 (2d Cir. 1999); *See also Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773 (2d Cir. 1991). "Where a plaintiff has relied on the terms and effect of a document in drafting the complaint and that document is thus integral to the complaint," the district court may consider the contents of the document "even if it is not formally incorporated by reference." *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 196 (2d Cir. 2005) (internal quotations omitted), *quoting Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). A Court may take judicial notice of an EEOC charge and agency determination. *Muhammad v. New York City Transit Auth.,* 450 F. supp.2d 198, 204-05 (E.D.N.Y. 2006).

To survive a motion to dismiss pursuant Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), *quoting Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Application of this standard is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. In the context of employment discrimination, the complaint need not contain specific facts to establish a *prima facie* case of discrimination, but must allege enough facts to state a claim to relief that is plausible on its face. *Allessi*, 16 F. Supp.3d at 226-27.

Retaliation

Defendant moves to dismiss plaintiff's retaliation claim on the ground that plaintiff has not plausibly alleged an adverse employment action because defendant's decision to rescind shift coverage for supervisors on leave was a reasonable defensive measure rather than a materially adverse employment action. Dkt. #4-1, pp.7-11. In other words, defendant argues that plaintiff cannot sustain a claim of retaliation based upon defendant's decision to discontinue a practice she complained was discriminatory. Dkt. #4-1, p.7. Defendant also argues that the denial of a single opportunity to act as a temporary supervisor following a policy change applied to all employees, did not alter any terms and conditions of employment, and would not dissuade a reasonable employee from complaining about discriminatory practices. Dkt. #4-1, pp.9-11.

Plaintiff responds that defendant's failure to afford her the opportunity to gain supervisory experience during Mr. Maurer's leave of absence does not fall within the scope of defensive measures. Dkt. #9, pp.10-17. Plaintiff further responds that it is plausible that the denial of the opportunity to assume supervisory duties could deter a reasonable worker from making or supporting a charge of discrimination. Dkt. #9, pp.12-13. Plaintiff also raises defendant's alteration of the E-line position, which made the position less desirable and deprived her of the ability to assume supervisory duties and develop additional experience for promotion. Dkt. #9, pp.10-13. In addition, plaintiff complains that after she complained of discrimination, she was denied an interview for the re-posted Senior Gaming Operations Inspector position. Dkt. #9, p.13.

Defendant replies that the alteration of terms and conditions of a job plaintiff did not possess cannot constitute a materially adverse change in the terms and conditions of plaintiff's employment. Dkt. #10, p.6. Moreover, defendant argues that plaintiff does not allege that anyone was interviewed for the re-posted position and cannot complain that she was denied an opportunity to participate in a hiring process that did not occur. Dkt. #10, pp.6-7. Defendant further replies that it "sensibly discontinued the practice of employees taking on their supervisor's duties temporarily for all employees in response to plaintiff's complaints." Dkt. #10, p.5.

Title VII of the Civil Rights Act of 1964 forbids employment discrimination against any individual based on race, color, religion, sex or national origin. 42 U.S.C. §2000e-2(a). The anti-retaliation provision of Title VII forbids an employer from discriminating against an employee because that employee opposed any practice made unlawful by Title VII or made a charge, testified, assisted or participated in a Title VII proceeding or investigation. 42 U.S.C. §2000e-3(a). To make out a *prima facie* case of retaliation, a plaintiff must demonstrate that: (1) she engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action. *Kelly v. Howard I. Spapiro & Assocs.Consulting Eng'rs*, 716 F.3d 10, 14 (2d Cir. 2013). "The term 'protected activity' refers to action taken to protest or oppose statutorily prohibited discrimination." *Benedith v. Malverne Union Free Sch. Dist*., 38 F. Supp.3d 286, 322 (E.D.N.Y. 2014). "Material adversity is to be determined objectively, based on the reactions of a reasonable employee." *Tepperwien v. Entergy Nuclear*

*Operations, Inc.*, 663 F.3d 556, 568 (2d Cir. 2011). For retaliation claims, an adverse

employment action is defined as one that is "harmful to the point that [it] could well

dissuade a reasonable worker from making or supporting a charge of discrimination."

*Hicks v. Baines*, 593 F.3d 159, 165 (2d Cir. 2010). This definition is broader than the

standard for claims of discrimination in that an adverse employment action for purposes

of retaliation claims need not affect the terms and conditions of employment. *Vega v.*

*Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015). The causal

connection can be established indirectly by showing that the protected activity was

closely followed in time by the adverse action. *Cifra v. Gen. Elec. Co.*, 252 F.3d 205,

217 (2d Cir. 2001).


An employer has latitude in deciding how to handle and respond to

discrimination claims and is entitled to take reasonable defensive measures against an

employee's charge of discrimination. *Hughes v. Twenty-First Century Fox, Inc.*, 304 F.

Supp.3d 429, 449 (S.D.N.Y. 2018); *Shih v. JPMorgan Chase Bank, N.A.*, 10 Cov. 9020,

2013 WL 842716, at *8 (S.D.N.Y. Mar. 7, 2013). "Reasonable defensive measures do

not violate the anti-retaliation provision of Title VII, even though such steps are adverse

to the charging party and result in different treatment," so long as they "do not affect the

complainant's work, working conditions or compensation." *Torres v. Pisano*, 116 F.3d

625, 640 (2d Cir. 1997), *quoting U.S. v. N.Y. City Transit Auth.,* 97 F.3d 672, 677 (2d

Cir. 1996).  For example, "[a]n employer's investigation of an EEOC complaint . . .

without more - that is, without additional particularized facts evidencing a retaliatory

intent and resulting in, or amounting to, adverse job consequence for the complainant -

cannot sustain a valid retaliation complaint." *Cox v. Onondaga Cty. Sheriff's Dep't,*, 760 F.3d 139, 147 (2d Cir. 2014). However, "an employer's investigation may constitute a cognizable retaliatory action if carried out so as to result in a hostile work environment, constructive discharge, or other employment consequences of a negative nature, or if conducted in such an egregious manner as to dissuade a reasonable worker from making or supporting a charge of discrimination." *Id.* (internal quotation omitted).

Plaintiff engaged in protected activity when she complained to Mr. Askins on October 14, 2014 and filed a charge with the EEOC on November 10, 2014 that defendant engaged in discrimination on the basis of gender when it afforded Mr. Maurer opportunities to learn the job duties of a Supervising Gaming Operations Inspector but denied such opportunities to female employees with equal, if not superior, experience as Senior Gaming Operations Inspectors. Mr. Askins was obviously aware of the EEOC charge when he cited it as the basis for denying plaintiff the opportunity to perform supervisory duties during Mr. Maurer's absence. In as much as Mr. Maurer's opportunity to engage in the duties of Supervising Gaming Operations Inspector was cited by Mr. Askins as justification for awarding him the promotion, it is plausible that denying plaintiff the opportunity Mr. Maurer had been afforded would dissuade a reasonable employee from complaining about the discriminatory manner in which training opportunities are offered. Moreover, Mr. Askins specifically cited the EEOC charge as the cause of his determination to deny the request that Senior Gaming Inspectors be allowed to perform the duties of Supervising Gaming Operations Inspector during Mr. Maurer's absence. Thus, plaintiff has plausibly alleged that

defendant's refusal to allow female employees to engage in supervisory duties during Mr. Maurer's absence was retaliatory and should be afforded the opportunity to discover whether defendant actually amended its policy for out-of-title work or only prevented female employees from performing out-of-title work. The Court notes, for example, that plaintiff alleges that subsequent to her complaint to Mr. Askins and charge to the EEOC, and in spite of the fact that the Civil Service had invalidated his promotion, Mr. Maurer was allowed to continue to perform the duties of a Supervising Gaming Operations Inspector. Similarly, plaintiff should be afforded the opportunity to engage in discovery as to the rationale and process resulting in alterations to the terms and conditions of the Senior Gaming Operations Inspector position previously held by Mr. Maurer. Accordingly, it is recommended that defendant's motion to dismiss plaintiff's retaliation claim be denied.

<u>Hostile Work Environment</u>

Defendant moves to dismiss plaintiff's hostile work environment claim on the ground that plaintiff's allegations do not rise to the level of severe or pervasive. Dkt. #4-1, pp.11-14. Moreover, defendant argues that plaintiff's allegations fail to support the inference that the environment of which she complained was due to her sex. Dkt. #4-1, pp.14-15.

Plaintiff responds that she has alleged sufficient facts to plausibly suggest that her workplace environment was hostile to female employees and that male employees were afforded more advantageous conditions of employment. Dkt. #9, pp.21-26.

To state a claim for a hostile work environment in violation of Title VII, a plaintiff must plead facts that would tend to show that the complained of conduct: (1) is objectively severe or pervasive, *i.e.*, creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's sex. *Patane v. Clark,* 508 F.3d 106, 113 (2d Cir. 2007). Determination as to whether a work environment is hostile is based upon the totality of circumstances, including: (1) frequency of the discriminatory conduct; (2) severity of the conduct; (3) whether the conduct is threatening and humiliating or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance. *Id.* The plaintiff must also allege a basis for imputing the objectionable conduct to the employer. *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002).

Plaintiff has failed to allege sufficient facts to plausibly allege that her working environment was objectively hostile. A failure to promote, without more, may not stand as grounds for a hostile work environment. *Campbell v. County of Onondaga,* 04-CV-1007, 2009 WL 3163498, at *22 (N.D.N.Y. Sept. 29, 2009), *citing Trezza v. Hartford, Inc.*, 98 CIV 2205, 1998 WL 912101, at *4 (S.D.N.Y. Dec. 30, 1998) (failure to promote does not impact workplace environment). Moreover, a single remark by a co-worker regarding his feeling about the prospect of a woman being promoted to a position of authority fails to demonstrate objective severity or pervasiveness. *Cf. Baron v. Winthrop*, 211 Fed. App'x 16, 17 (2d Cir. 2006) (series of remarks made by plaintiff's supervisor evidencing bias against women not sufficiently severe or pervasive to alter

the terms and conditions of plaintiff's employment so as to constitute a hostile work environment). Finally, plaintiff's allegation that she has been ostracized by her peers is impermissibly vague and fails to allege causation or impute the conduct of her peers to her employer. *See Boza-Meade v. Rochester Hous. Auth*., 170 F. Supp.3d 535, 547 (W.D.N.Y. 2016) (vague allegations that co-workers made fun of plaintiff insufficient to plausibly allege hostile work environment). Accordingly, it is recommended that defendant's motion to dismiss plaintiff's claim of hostile work environment be granted.

CONCLUSION

For the foregoing reasons, it is recommended that defendant's motion to dismiss (Dkt. #4), plaintiff's NYHRL and Title VII hostile work environment causes of action be granted and defendant's motion to dismiss plaintiff's Title VII retaliation claim be denied.

Therefore, it is hereby ORDERED pursuant to 28 U.S.C. § 636(b)(1) that:

This Report, Recommendation and Order be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report, Recommendation and Order must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed.R.Civ.P. 72(b) and Local Rule 72(b).

The district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance. *See, e.g., Patterson-Leitch Co. v. Massachusetts Mun. Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988).

<u>Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order</u>. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." <u>Failure to comply with the provisions of Rule 72(b) may result in the District Judge's refusal to consider the objection.</u>

The Clerk is hereby directed to send a copy of this Report, Recommendation and Order to the attorneys for the parties.

**SO ORDERED.**

DATED:     Buffalo, New York
           December 14, 2021

                              <u>  s/ H. Kenneth Schroeder, Jr.  </u>
                              **H. KENNETH SCHROEDER, JR.**
                              **United States Magistrate Judge**